# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONALD LEE BACHAND,⁣ )
⁣ )
⁣ Plaintiff, )
⁣ )
⁣ v. ) 1:15CV00686
⁣ )
CAROLYN W. COLVIN, )
Acting Commissioner of Social )
Security, )
⁣ )
⁣ Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Ronald Lee Bachand, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum), Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff filed his first applications for DIB and SSI in September 2007, alleging an onset date of July 20, 2007. (See Tr. 84.) Those applications resulted in an ALJ decision on the record

without a hearing granting Plaintiff a closed period of disability from July 20, 2007, to August 19, 2008. (Tr. 79-90.)

Plaintiff then filed a second set of applications for DIB and SSI, again alleging an onset date of July 20, 2007. (Tr. 307-17.) Upon denial of those applications initially (Tr. 91-112, 163-67) and on reconsideration (Tr. 113-38, 175-92), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 200-01).[1] Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 59-78.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 139-53.) The Appeals Council thereafter granted Plaintiff's request for review and remanded the matter back to the ALJ for further proceedings, including reconsideration of Plaintiff's residual functional capacity. (Tr. 159-62.)

Following a second hearing, which Plaintiff, his attorney, and another VE attended, the ALJ again determined that Plaintiff did not meet the requirements for disability under the Act. (Tr. 15-28.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

---

[1] Prior to the hearing, Plaintiff amended his onset date to January 1, 2009. (See Tr. 401.)

1.    [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2013.

2.    [Plaintiff] has not engaged in substantial gainful activity since January 1, 2009, the amended alleged onset date.

3.    [Plaintiff] has the following severe impairment: Status post cerebrovascular accident (CVA) with residuals affecting the left upper extremity.

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    . . . [Plaintiff] has the residual functional capacity to perform medium work . . ., except he has total disuse of his left arm and is limited to lifting forty (40) pounds with his dominate right upper extremity.

. . .

6.    [Plaintiff] is unable to perform any past relevant work.

. . .

10.  Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11.  [Plaintiff] has not been under a disability, as defined in the [] Act, from January 1, 2009, through the date of this decision.

(Tr.  20-27  (bold  font  and  internal  parenthetical  citations omitted).)

3

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

4

is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

Case 1:15-cv-00686-TDS-LPA  Document 14  Filed 07/29/16  Page 5 of 26

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ did not explain after giving little weight to all medical opinions in the record how she [sic] made her [sic] RFC determination" (Docket Entry 11 at 3);

2) the ALJ failed to "give a complete function-by-function analysis and explanation of the nonexertional mental functions associated with [Plaintiff's] mental impairments" (<u>id.</u> at 7); and

3) "[t]he ALJ . . . accepted testimony from a [VE] that apparently conflicts with the [<u>Dictionary of Occupational Titles</u>] yet he failed to obtain an explanation from the [VE] and failed to resolve the conflicts in the written decision" (<u>id.</u> at 17).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 4-19.)

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Physical RFC

In Plaintiff's first issue on review, he asserts that the ALJ failed to adequately explain the basis for the RFC determination. (See Docket Entry 11 at 3-6.) More particularly, Plaintiff maintains that the ALJ afforded great weight to the opinions of state agency consultants Dr. Dorothy Linster and Dr. Lillian Horne, but did not include in the RFC their postural and environmental restrictions, including limitations on climbing, crouching, stooping, and exposure to workplace hazards. (Id. at 3-4 (citing Tr. 24, 26, 97-98, 107-08, 120-21, 132-33).)[6] Plaintiff views that alleged error as prejudicial, because "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping." (Id. at 4 (quoting Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (1983) ("SSR 83-10").) Further, Plaintiff faults the ALJ for failing to explain how Plaintiff can perform medium work while limited to "total disuse of his left arm," given SSR 83-10's commentary that, for medium work, "[u]se of the arms and hands is necessary to grasp, hold, and turn objects." (Id. at 5 (quoting SSR 83-10, 1983 31251, at *6) (emphasis omitted).) Lastly, Plaintiff disputes the ALJ's remark that Plaintiff "by his own

---

[6] Although Plaintiff claims that the state agency consultants limited Plaintiff to occasional crouching (see Docket Entry 11 at 4), no such limitation exists in the consultants' RFC findings (see Tr. 97, 197, 120, 132). Dr. Linster did restrict Plaintiff to occasional balancing. (See Tr. 97, 107.)

admission is able to perform the requirements of medium work" (Tr. 25), because medium work requires the ability to lift 25 pounds for up to two-thirds of an eight-hour work day and 50 pounds for up to one-third of a work day, and Plaintiff admitted neither the quantity nor the frequency of the lifting required by medium work (see Docket Entry 11 at 5). Plaintiff's contentions fall short.

Although the ALJ did indeed afford "great weight" to the opinions of state agency consultants Drs. Linster and Horne, that fact alone did not obligate the ALJ to adopt their opinions wholesale. See Bennett v. Colvin, No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (unpublished) (holding that ALJ who accords great weight to opinion need not adopt that opinion wholesale); Razey v. Colvin, No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (unpublished) (rejecting requirement that ALJ to adopt a medical opinion wholesale); Lambert-Newsome v. Astrue, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012) (unpublished) (noting that merely because ALJ gave great weight to an opinion "does not mean he was required to adopt it wholesale"). However, the ALJ did bear an obligation to explain why he did not adopt the consultants' postural and environmental restrictions. See Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p")

("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.").[7]

Nevertheless, the ALJ's failure to provide that explanation amounts to harmless error under the circumstances of this case. The ALJ asked the VE if any jobs existed for a "male between the ages of 55 and 59, who . . . is right-hand dominant by nature, and has total disuse of his left, non-dominant arm, except as a . . . blocker, or place holder, and with his right hand can lift up to 40 pounds." (Tr. 54.) In response, the VE testified that such an individual could perform the jobs of warehouse worker (Dictionary of Occupational Titles ("DOT") No. 922.687-010, 1991 WL 688132 (G.P.O. 4th ed. rev. 1991)) and general laborer (DOT No. 754.687-010, 1991 WL 680375). (Tr. 54-55.) A review in the DOT of the characteristics of the two jobs relied upon by the ALJ confirms that one of the two, general laborer, fully accommodates the state agency consultants' postural and environmental restrictions. See DOT No. 754.687-010 (reflecting no climbing, balancing, stooping, moving mechanical parts, or high, exposed places). The VE testified that "at least 1,000" general laborer jobs existed in the regional economy (see Tr. 55), which represents a significant

---

[7] Defendant argues that the ALJ provided an explanation for not adopting the state agency consultants' postural and environmental restrictions in his prior decision dated June 21, 2012 . (See Docket Entry 13 at 9, 10 n.1 (citing Tr. 18, 150-51).) However, the Appeals Council vacated that decision (see Tr. 159-62), and Defendant has not cited authority that would permit the Court to consider analysis from a vacated administrative decision in reviewing the instant administrative decision (see Docket Entry 13 at 9, 10 n.1).

number of jobs under Fourth Circuit precedent, see Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the vocational expert . . . do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number."). Thus, the Court may affirm, because, even had the ALJ fully adopted the state agency consultants' RFC opinions, the ultimate outcome of this case would not have changed. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").[8]

Finally, the ALJ's remark that, in light of Plaintiff's testimony that he can lift 40 pounds with his right hand and 10 pounds with his left hand (see Tr. 45), he "by his own admission is able to perform the lifting requirements of medium work" (Tr. 25)

_____

[8] Plaintiff's reliance on SSR 83-10 misses the mark. The definitions of exertional levels and related concepts in SSR 83-10 apply "when an individual's capability to do other work is determined under the provision of [the Medical-Vocational Guidelines]." SSR 83-10, 1983 WL 31251, at 4. Here, the ALJ relied on the testimony and expertise of a VE, who cited a job, general laborer, which, as discussed above, fully accommodated the state agency consultants' postural and environmental restrictions. (See Tr. 54-55.) Further, Plaintiff's reliance on a letter from Pat Clifford, a vocational evaluator (see Docket Entry 11 at 5 (citing Tr. 404)), similarly fails. Plaintiff submitted that letter with his request for review of the ALJ's prior decision dated June 21, 2012 (see Tr. 403-08), and Mr. Clifford therein opined that the ALJ's RFC determination from the prior decision (which limited Plaintiff to only 30 pounds of lifting as compared to 40 pounds in the current decision, (compare Tr. 24, with Tr. 146) did not fit within the definition of medium work (see Tr. 404). Thus, that letter does not offer an opinion relevant to the current RFC determination.

does not harmonize with the regulations's definition of medium work, which requires an individual to lift up to 50 pounds occasionally and up to 25 pounds frequently.  See 20 C.F.R. §§ 404.1567(c), 416.967(c).  However, that misstatement had no material consequence where the ALJ did not ultimately determine Plaintiff could perform the _full_ range of medium work.  Instead, the ALJ credited Plaintiff's testimony (see Tr. 45) and limited him to "total disuse of the left arm" and up to 40 pounds of lifting with the right arm.  (Tr. 24.)

In sum, Plaintiff's first assignment of error lacks merit.

## 2. Function-by-Function Analysis of Mental RFC

Plaintiff next asserts an entitlement to relief because the ALJ failed to perform a function-by-function analysis of Plaintiff's mental work-related limitations, in violation of SSR 96-8p, 1996 WL 374184, at *1, 3, 6, and Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).  (See Docket Entry 11 at 7-17.)  In particular, Plaintiff argues that the ALJ did not sufficiently consider the effect of [Plaintiff's] depression on '[w]ork-related mental activities generally required by competitive, remunerative work[, which] include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting'" (id. at 11 (citing SSR 96-8p, 1996 WL 374184, at *6)), and failed

to consider the combined effect of Plaintiff's non-severe and severe impairments (id. at 11-12 (citing SSR 96-8p, 1996 WL 374184, at *5)). Further, Plaintiff contends that the ALJ failed to include adequate restrictions in the RFC arising out of Plaintiff's mild restrictions in daily activities and concentration, persistence, or pace ("CPP") in violation of Mascio. (See id. at 10-17 (citing Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished), and Ashcraft v. Colvin, No. 3:13CV00417RLVDCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished)).) Plaintiff's arguments in this regard do not entitle him to reversal or remand.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

14

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. Mascio, 780 F.3d at 636-37. The Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate

15

meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, contrary to Plaintiff's argument (see Docket Entry 11 at 11), the ALJ here specifically addressed the "[w]ork-related mental activities generally required by competitive, remunerative work," SSR 96-8p, 1996 WL 374184, at *6:

> The mental health evidence establishes that [P]laintiff's mental impairment of depression is non-severe. The evidence shows minimal signs and symptoms of depression noted in his 2009 and 2010 treatment notes. He reported feeling more depressed in November 2010; however, there is evidence [Plaintiff] also had problems with alcohol. In fact, he was referred for substance abuse treatment by his primary care physician, Dr. Grismondi-Eagan, and was enrolled in the Moderate Level Substance Abuse Treatment Program at DayMark Recovery in April 2011 for fourteen weeks. During his initial assessment at DayMark, [Plaintiff's] mental status examination revealed an alert, oriented man whose thought processes and cognition were within normal limits. Further, although he was seen as depressed, his level of treatment was mild. Moreover, it was revealed that [Plaintiff's] depression was related to normal life stressors, which he vocalized as loss of self-worth related to lack of income, loss of financial independence, diminished health and ability. In a treatment note dated September 2011, Dr. Grismondi-Eagan wrote that [Plaintiff] continued to follow-up with DayMark; that he continued to abstain from alcohol and his depression was in remission. A letter from DayMark Recovery dated November 3, 2011 revealed that [Plaintiff] had successfully completed the substance abuse treatment and was continuing in outpatient counseling in order to maintain progress in his recovery. Furthermore, the treatment notes show that he has continued to abstain from alcohol use. At his hearing, [Plaintiff] testified that he has good and bad days with depression but his anti-depression medication is effective. Accordingly, I find that [Plaintiff's] depression is situational and not disabling since it is primarily due to psycho-social stressors and, there is no evidence that his depression has interfered with his ability to understand, carry out, and remember simple instructions, use judgment, respond

16

<u>appropriately to supervisors, co-workers, usual work
situations, or to deal with changes in a routine work
setting</u>.

(Tr. 22 (emphasis added) (internal citations omitted)). Further,
the ALJ gave "great weight" to the opinions of the state agency
consultants who "concluded that [Plaintiff] could perform work at
the medium exertional level with no severe mental limitations
imposed" (Tr. 26), thus evidencing that the ALJ did consider the
combined effect of Plaintiff's non-severe depression and severe
stroke residuals in determining the RFC. The ALJ's analysis thus
complies with the dictates of SSR 96-8p and <u>Mascio</u>.

Plaintiff's argument that the ALJ failed to account in the
mental RFC for Plaintiff's mild limitations in activities of daily
living and CPP similarly misses the mark.[9] At steps two and three
of the SEP, the ALJ must assess the degree of functional limitation
resulting from Plaintiff's mental impairments pursuant to criteria
in the corresponding mental disorders in the listing of
impairments. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00; 20
C.F.R. §§ 404.1520a(b)(2) & (c)(2), 416920a(b)(2) & (c)(2). As
relevant to the instant case, paragraph B of Listing 12.04
("Affective [D]isorders") contains four broad functional areas: 1)
activities of daily living; 2) social functioning; 3) CPP; and 4)
episodes of decompensation. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x

---

[9] At steps two and three of the SEP, ALJs rate the degree of limitation in the
broad functional areas of daily activities, social functioning, and CPP using a
"five-point scale: [n]one, mild, moderate, marked, and extreme." 20 C.F.R.
§§ 404.1520a(c)(4), 416.920a(c)(4).

1, § 12.04B; see also 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ's decision must include a specific finding of the degree of limitation in each of those functional areas. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

However, the paragraph B criteria limitations do not constitute an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (emphasis added). Rather, the ALJ uses those limitations to evaluate the severity of Plaintiff's mental impairments at steps two and three of the SEP. Id. "The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C," id., and includes consideration of Plaintiff's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," id. at *6. Thus, the regulations do not require the ALJ to incorporate word-for-word the limitations found in evaluating the severity of mental impairments into either the RFC or any hypothetical question. See Yoho v. Commissioner of Soc. Sec., No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished) (holding ALJ has no obligation to transfer paragraph B findings verbatim to hypothetical question(s)); accord Patterson v. Astrue, No.

18

1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (unpublished).

As Plaintiff argues (see Docket Entry 11 at 13-14), some district courts within the Fourth Circuit have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of those mild limitations or justify the omission of such restrictions. See, e.g., Ashcraft, 2015 WL 9304561, at *9 ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required." (emphasis added)); Reinhardt, 2015 WL 1756480, at *3 ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations when [the] plaintiff's RFC for work is considered."). Assuming that Mascio applies even in the context of mild limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), the ALJ here sufficiently

19

explained why Plaintiff's <u>mild</u> limitations in daily activities and CPP did not translate into further restrictions in the RFC.

At step three, the ALJ provided the following analysis for finding only mild limitation in daily activities and CPP:

> The first functional area is activities of daily living. In this area, [Plaintiff] has mild limitation. I see little indication that his mental impairments have affected his ability to perform activities appropriate to his circumstances in life, or to structure a daily routine for himself. [Plaintiff] only restricts himself when he has an alleged physical limitation. However, he reported the ability to care for his own personal needs, prepare light meals, and do some light household chores. A Third Party Report shows that [Plaintiff] is limited by his left hand but he is able to do the laundry and some light cleaning, cook, shop for groceries, and take care of the family dog. The State agency mental health experts concluded that [Plaintiff] was only mildly limited in this area. Thus, the undersigned concludes that [Plaintiff] has no more than mildly limited in this area of functioning.
>
> . . .
>
> The third functional area is [CPP]. In this area, [Plaintiff] has mild limitation. He reported that he needed no special reminders to care for personal needs or take medication. He could follow both written and oral instructions and appeared to have no problem finishing tasks but for physical limitations. During his mental status examination at DayMark Recovery, [Plaintiff's] thought process and cognition were within normal limits and his remote and recent memory was normal. The undersigned noted [Plaintiff] was fully capable of answering all questions at the hearing as well as able to maintain attention without difficulty. Both State agency medical consultants opined that [Plaintiff] had only mild limitations in this area. Thus, [Plaintiff] has no more than mild limitations in the area of difficulties in maintaining [CPP].

20

(Tr. 23 (internal citations omitted).)  The ALJ's above-quoted analysis provides "an accurate and logical bridge," <u>Clifford</u>, 227 F.3d at 872, between the finding of <u>mild</u> deficits in daily activities and CPP and the RFC determination, by discussing state agency opinion evidence that Plaintiff suffered only mild deficits in these areas that did not translate into any limitations in the RFC and by highlighting daily activities indicative of an ability to carry out work on a sustained basis.  <u>See</u> <u>Johnson v. Colvin</u>, No. 6:14-CV-3579-RBH, 2016 WL 462430, at *7 (D.S.C. Feb. 8, 2016) (unpublished) (finding no error in ALJ's omission of restrictions in RFC related to mild limitations in daily activities and social functioning where ALJ relied on "the activity assessment by the state agency physicians" and the claimant's testimony that he "played with his dogs, visits with his friends, and wallpapered his house").

In short, Plaintiff's second issue on review does not warrant reversal or remand.

### 3. Conflict Between VE and the <u>DOT</u>

Lastly, Plaintiff maintains that the ALJ erred by failing to ask the VE whether his testimony harmonized with the information in the <u>DOT</u> in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704, at *1 (Dec.

4, 2000) ("SSR 00-4p"), and <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015). (<u>See</u> Docket Entry 11 at 17-19.) According to Plaintiff, on cross-examination, "the VE stated that his testimony conflicted with the [<u>DOT</u>]," in that he testified that he reduced the number of warehouse worker and general laborer jobs available to accommodate Plaintiff's inability to use his left arm. (<u>Id.</u> at 18 (citing Tr. 55-56).) Plaintiff asserts that SSR 00-4p "require[s] the ALJ (not the [VE]) to '[i]dentify and obtain a reasonable explanation' for conflicts between the [VE's] testimony and the [<u>DOT</u>], and to '[e]xplain in the determination or decision how any conflict that has been identified was resolved.'" (<u>Id.</u> at 17-18 (citing SSR 00-4p, 2000 WL 1898704, at *10.) Plaintiff claims that "the ALJ's decision has no explanation of how the conflict was resolved[,] . . . does not even mention that the VE said his testimony conflicted with the [<u>DOT</u>]," and in fact states "that the [VE's] testimony is consistent with the information contained in the [<u>DOT</u>]." (<u>Id.</u> at 18-19 (citing Tr. 27).) Plaintiff's arguments do not warrant relief.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the <u>DOT</u>:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [<u>DOT</u>]. When there is an <u>apparent unresolved conflict</u> between VE . . . evidence and the [<u>DOT</u>], the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE

22

> . . . evidence to support a determination or decision
> about whether the claimant is disabled.  At the hearings
> level, as part of the adjudicator's duty to fully develop
> the record, the adjudicator will inquire, on the record,
> as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  An ALJ discharges his duty under SSR 00-4p by "inquir[ing] on the record whether the [VE's] testimony [is] consistent with the DOT" and "elicit[ing] a reasonable explanation for" any conflicts identified by the VE.  Fisher v. Barnhart, 181 F. App'x 359, 366 (4th Cir. 2006).

As an initial matter, the Commissioner concedes that the ALJ neglected to ask the VE whether his testimony conflicted with the DOT, but emphasizes "that the ALJ may not have done so simply because Plaintiff's counsel asked about conflicts first."  (See Docket Entry 13 at 18 (citing Tr. 55-56).)  Indeed, on cross-examination, Plaintiff's counsel engaged in the following exchange with the VE regarding the conflict at issue:

ATTY:    For your, the numbers for your modified positions, how
         did you determine those numbers?

VE:      I was looking at the U.S. Publishing Company data in
         terms of their employment quarterly data, and also I
         looked at the Bureau of Labor Statistics data.

ATTY:    Okay.  And for the duties for warehouse worker, he
         wouldn't be required to use both arms?

23

VE:      Well, ideally, yes.  What I was going by was someone that
         could, could lift up to 40 pounds with the, with the
         right hand, but if you look at the description of that in
         the <u>DOT</u>, it's going to be bilateral dexterous abilities.

ATTY:    Okay.

VE:      But what I was, what I was looking at there would an
         individual who could, could make an adjustment if, in
         fact, they had the residual functional ability as the
         Judge pointed out in the hypothetical.

ATTY:    Okay.  <u>For general laborer, would they be required, based
         on the DOT, to use both arms</u>?

VE:      As far as the <u>DOT</u> is concerned, yes, sir.  Yeah, I was
         looking at both of those in terms of reduced numbers.

ATTY:    Okay.  <u>Nothing further, Your Honor</u>.

(Tr. 55-56 (emphasis added).)  Due to that explicit discussion, on
the record, of the conflict, and how the VE resolved the conflict,
any failure by the ALJ to expressly ask the VE whether any conflict
existed between his testimony and the <u>DOT</u> constitutes harmless
error.  <u>See generally</u> <u>Fisher</u>, 869 F.2d at 1057 (observing that
"[n]o principle of administrative law or common sense requires us
to remand a case in quest of a perfect opinion unless there is
reason to believe that the remand might lead to a different
result"); <u>see also</u> <u>Pearson</u>, 810 F.3d at 211 (holding that ALJ and
VE "should address exactly what [capabilities] the stated

occupations require and whether the claimant can fulfill those requirements" and that VE "must testify to how many of these positions do not require [the limitations at issue]."). [10]

To the extent Plaintiff now complains that the ALJ (and/or VE) did not sufficiently explain the methodology used to arrive at the reduced numbers of jobs (see Docket Entry 11 at 18), Plaintiff has waived such argument by failing to press the VE further on cross-examination regarding his methodology. See Coleman v. Colvin, Civ. No. 0:14-2697-RBH, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015) (unpublished) ("[T]he court is unpersuaded by [the plaintiff's] attempts to now challenge the [VE's] testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding."); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue on judicial review where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014).

Accordingly, Plaintiff's third assignment of error fails as a matter of law.

---

[10] Similarly, in light of the resolution of the conflict on the record, any inaccuracy in the ALJ's statement in the decision that "the [VE's] testimony is consistent with the information contained in the [DOT]" (Tr. 27) constitutes harmless error.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 29, 2016